Appeal No. 13-55763
Decided October 8, 2015
Before Hon. John T. Noonan Jr., Kim McLane Wardlaw, and Mary H. Murguia

# United States Court of Appeals

## FOR THE

# Ninth Circuit

————————

BIKRAM'S YOGA COLLEGE OF INDIA, L.P. and BIKRAM CHOUDHURY,
*Plaintiffs-Appellants*,

*v.*

EVOLATION YOGA, LLC, MARK DROST, and ZEFEA SAMSON,
*Defendants-Appellees.*

————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE OTIS D. WRIGHT, DISTRICT JUDGE
CASE NO. 2:11-CV-11-05506-ODW (SSx)

————————

**PETITION FOR REHEARING AND FOR REHEARING EN BANC**

————————

**O'MELVENY & MYERS LLP**
DANIEL M. PETROCELLI
IVANA CINGEL
1999 AVENUE OF THE STARS
LOS ANGELES, CA 90067-6035
TELEPHONE: (310) 553-6700
FACSIMILE: (310) 246-6779

*Attorneys for Plaintiffs-Appellants*

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................1

   A.  The Panel's Opinion Conflicts with Circuit Precedent Holding
       That Existence of Alternatives Distinguishes Expression from
       Idea. ..................................................................................................4

   B.  The Panel Opinion Erroneously Construes the Idea/Expression
       Dichotomy That Underpins the Copyright Act. ..................................8

       1.  The Panel's Opinion Improperly Invents Functionality as
           the Determinative Consideration of Copyright..........................8

       2.  The Panel's Opinion Places Undue Import on the Manner
           in Which the Sequence Has Been Fixed. ................................13

   C.  Neither *Palmer* nor *Meredith* Supports the Conclusion That the
       Sequence Is an Uncopyrightable System. .........................................15

II.  CONCLUSION..........................................................................................18

# TABLE OF AUTHORITIES

**Page**

## CASES

*ADA v. Delta Dental Plans Ass'n*,
 126 F.3d 977 (7th Cir. 1997) ...........................................................10

*ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions &
 Parts, Inc.*,
 402 F.3d 700 (6th Cir. 2005) ........................................................7, 8

*Baker v. Selden*,
 101 U.S. 99 (1879)......................................................................9, 13

*BellSouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc.*,
 999 F.2d 1436 (11th Cir. 1993) .........................................................7

*CDN Inc. v. Kapes*,
 197 F.3d 1256 (9th Cir. 1999) ........................................................10

*Ets-Hokin v. Skyy Spirits, Inc.*,
 225 F.3d 1068 (9th Cir. 2000) ........................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991)........................................................................10

*Filmvideo Releasing Co. v. Hastings*,
 426 F. Supp. 690 (S.D.N.Y. 1976), *aff'd*, 594 F.2d 852 (2d Cir.
 1978) ...............................................................................................15

*Harper House, Inc. v. Thomas Nelson, Inc.*,
 889 F.2d 197 (9th Cir. 1989) ..........................................................10

*Horgan v. MacMillan, Inc.*,
 789 F.2d 157 (2d Cir. 1986) ...........................................................15

*Johnson Controls, Inc. v. Phoenix Controls Sys., Inc.*,
 886 F.2d 1173 (9th Cir. 1989) ............................................... passim

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
 345 F.3d 1140 (9th Cir. 2003) ........................................................11

*Palmer v. Braun*,
 287 F.3d 1325 (11th Cir. 2002) .................................................15, 16

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Practice Mgmt. Info. Corp. v. AMA*,
    121 F.3d 516 (9th Cir. 1997) ................................................................ passim

*Publ'ns Int'l Ltd. v. Meredith Corp.*,
    88 F.3d 473 (7th Cir. 1996) .....................................................................16, 17

*Seltzer v. Sunbrock*,
    22 F. Supp. 621 (S.D. Cal. 1938)............................................................17, 18

*Warren Publ'g, Inc. v. Microdos Data Corp.*,
    115 F.3d 1509 (11th Cir. 1997) ...................................................................12

## STATUTES

17 U.S.C. § 101 ...............................................................................................9, 10

17 U.S.C. § 102(a)(4) ...........................................................................................2

17 U.S.C. § 102(b) .............................................................................................1, 8

17 U.S.C. § 103 .....................................................................................................2

17 U.S.C. § 106 ...............................................................................................14, 15

## RULES

Fed. R. App. P. 35 .................................................................................................2

Fed. R. App. P. 40 .................................................................................................4

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8............................................................................................3, 9

## I.  <u>INTRODUCTION</u>

This Court was asked to decide whether an integrated, coherent, and expressive 90-minute routine composed of 26 carefully selected and arranged yoga asanas[1] and two breathing exercises that are always performed in the same order, at the same pace, with the same verbal guidance, is entitled to copyright protection as either a choreographic work or a compilation.

The Panel concluded that this work, termed the "Sequence"—which Bikram Choudhury[2] created by drawing on hundreds of yoga asanas in the public domain to develop a routine with an aesthetic appeal and graceful flow—was not the proper subject of copyright under 17 U.S.C. § 102(b). Characterizing the Sequence as a "healing methodology" and emphasizing that Bikram and others have described it as a "system" that may convey physical, mental, and spiritual benefits, the Panel held that the Sequence is not protectable expression but rather an idea,

---

[1] An "asana" is a yogic posture that lasts several minutes and consists of numerous sequential movements, pauses, and positions akin to ballet positions. (*See, e.g.*, EOR293, 530-73.) Each asana in the Sequence is connected to the next with a series of interstitial movements. (*See, e.g.*, EOR536-37.) There are hundreds of asanas in the public domain. (EOR267.) Bikram does not claim copyright in individual asanas, in the idea of arranging asanas, in the idea of an asana-based routine, in the idea of yoga, or—contrary to the Panel's finding—in any other "idea."

[2] Petitioners and Plaintiffs-Appellants Bikram's Yoga College of India, L.P., and Bikram Choudhury are referred to as "Bikram." Defendants-Appellees Evolation Yoga, LLC, Mark Drost, and Zefea Samson are referred to as "Evolation." Cites to Bikram's opening and reply brief are denoted "AOB" and "ARB," respectively.

1

process, or system for the betterment of health. The Panel never reached the question of whether the Sequence qualifies for copyright protection as either a choreographic work or a compilation.

The Sequence, however, is entitled to copyright protection as it is not an idea, process or a system, but one expression of an idea of arranging asanas in a routine. As a 90-minute arrangement of continuous, non-repetitive movements that follow a set, deliberate and aesthetically pleasing cadence, the Sequence qualifies for copyright protection as a choreographic work under Section 102(a)(4) of the Copyright Act. And, as the original selection and arrangement of the 26 asanas and two breathing exercises, it also qualifies as a compilation under Section 103 of the Copyright Act.

This Court should grant Bikram's requests for en banc reconsideration pursuant to Federal Rule of Appellate Procedure 35 to secure uniformity of its decisions, as the Panel's opinion conflicts with this Court's precedent defining and applying the distinction between protectable expression and unprotectable ideas, processes and systems. Specifically, in concluding that the Sequence is an unprotectable idea, process or system, the Panel ignored two of this Court's decisions which required the Panel to assess whether alternative means exist to achieve the benefit associated with the Sequence and which hold that the existence of such alternatives renders a work protectable expression. *See Practice Mgmt.*

*Info. Corp. v. AMA*, 121 F.3d 516, 520 n.8 (9th Cir. 1997); *Johnson Controls, Inc. v. Phoenix Controls Sys., Inc.*, 886 F.2d 1173, 1174-76 (9th Cir. 1989). This principle applies here and mandates a finding that the Sequence is entitled to copyright protection.

This Court should also grant Bikram's request for en banc rehearing because this case presents a question of exceptional importance. As the Panel's opinion recognizes, this case "implicates a fundamental principle underlying constitutional and statutory copyright protection" (Op. at 3)—namely, the difference between unprotectable ideas/processes/systems and copyrightable expression—and it does so in the context of choreographic works and compilations, an area of law yet to be refined.

The Panel's analysis of this fundamental principle rests on two erroneous premises: (1) that a work of authorship that is claimed to convey benefits (or is otherwise useful) constitutes an idea, process or system and is thus exempt from copyright protection under Section 102(b), and (2) that a work of authorship described and fixed in text is necessarily an "idea" and that only the textual description of those matters is protectable as expression. However, that a work may convey benefits or be otherwise useful is not a basis for withholding copyright protection, the very purpose of which is to "promote the Progress of … useful Arts." U.S. Const. art. I, § 8. And there is no support in the Copyright Act, or in

Supreme Court or Circuit precedent, for the proposition that the material described in a text necessarily constitutes an uncopyrightable idea.

In addition to en banc rehearing, Bikram requests Panel rehearing pursuant to Federal Rule of Appellate Procedure 40 so that the Panel may consider facts and points of law overlooked in its opinion, as enumerated above and as identified and addressed further below.

### A. The Panel's Opinion Conflicts with Circuit Precedent Holding That Existence of Alternatives Distinguishes Expression from Idea.

Bikram's Sequence embodies one of more than a million ways to select and arrange 26 yoga asanas into a unique composition. Ninth Circuit cases that address the distinction between protectable expression and unprotectable ideas, processes or systems recognize that even where the work serves a purpose, the existence of alternative means to accomplish that purpose indicates that the work itself is an expression of an idea, rather than the idea itself. *See Practice Management*, 121 F.3d at 520 n.8; *Johnson Controls*, 886 F.2d at 1174-76. Without ever mentioning these cases, the Panel's opinion expressly rejects their holdings by asserting that "[i]t makes no difference that similar results could be achieved through a different organization of yoga poses and breathing exercises." (Op. at 18.) It then concludes that even though the Sequence "may be [but] one of many possible yoga sequences capable of attaining similar results, the Sequence is nevertheless a process and is

therefore ineligible for copyright protection." (*Id*. at 19.) The Panel's disregard of this controlling precedent and elimination of a consideration necessary to determine a work's copyrightability warrants rehearing and reversal.

This Court has repeatedly recognized that works that happen to serve a particular purpose—even works that are nominally described by their authors or the Court as systems or processes—constitute protectable expression and not unprotectable ideas, systems or processes if they reflect one of multiple means to achieve a purpose. In *Practice Management*, this Court considered whether the American Medical Association ("AMA") held a valid copyright in a "coding *system* to enable physicians ... to identify particular medical procedures." 121 F.3d at 517 (emphasis added). This Court rejected the argument that the coding system was an uncopyrightable idea under Section 102(b) on the ground that the AMA's copyright "does not stifle independent creative expression in the medical coding industry [or] … prevent … the AMA's competitors from developing comparative or better coding systems" and instead "simply prevents wholesale copying of an existing system." *Id*. at 520 n.8.

Similarly, in *Johnson Controls*, this Court upheld an anti-infringement injunction after finding that the "structure, sequence and organization" of an "automated process control *system*"—a computer program designed to control wastewater treatment plants—qualified as protectable expression rather than an

5

uncopyrightable idea. 886 F.2d 1174-76 (emphasis added). This Court reasoned that because "some discretion and opportunity for creativity exist[s] in the [program's] structure, … the structure ... is expression, rather than an idea in itself." *Id.* at 1176.

The Sequence qualifies as expression because it reflects "discretion and opportunity for creativity," *Johnson Controls*, 886 F.2d at 1176, and in no way precludes competitors from developing alternative asana-based routines, *Practice Management*, 121 F.3d at 520 n.8. The record is replete with examples of the creative decisions Bikram made in creating the Sequence. (EOR267-69, 530-73.) And none of the statements cited by the Panel regarding the supposed benefits of the Sequence—*i.e.*, Bikram and others' generalized claims that the Sequence will "improve health," "alleviate … physical injuries and illness," "offer[] spiritual benefits," and contribute to "a sense of well-being and boundless energy" (Op. at 7, 13, 14)—demonstrate that the Sequence is the only asana-based routine that may provide those benefits, or that it is even the most effective asana-based routine for achieving those benefits. Indeed, in addition to concededly copying the Sequence, Evolation itself offers a number of other asana-based routines. (EOR164, 167.)

Rather than address and apply this Court's precedent, the Panel relies on two out-of-circuit cases that adopt a seemingly contrary position, namely, that the existence of alternative means of achieving a desired result is inconsequential to

the idea/expression analysis. (Op. at 18-19, citing *BellSouth Adver. & Publ'g Corp.*
*v. Donnelly Info. Publ'g, Inc.*, 999 F.2d 1436 (11th Cir. 1993), and *ATC*
*Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d
700 (6th Cir. 2005). Yet neither of these cases addresses Section 102(a), and the
language cited by the Panel actually relates to the question whether the work is
sufficiently ***original***, not whether it constitutes protectable expression rather than
uncopyrightable idea under Section 102(b).

In *BellSouth*, the Eleventh Circuit analyzed the originality of a business
directory, "an alphabetized list of business types, with individual businesses listed
in alphabetical order." 999 F.2d at 1442. The court held that the directory lacked
the requisite originality to be copyrightable because it was "***the one way*** to
construct a useful business directory," and thus failed to qualify for copyright
protection under the merger doctrine. *Id.* at 1441-43 (emphasis added). The Panel's
opinion plucks from *BellSouth*'s originality analysis the following statement—
"[t]he relevant inquiry is not whether there is some imaginable, although
manifestly less useful, method" of achieving a particular end—and misapplies it to
the idea/expression analysis. *Id.* at 1443. Yet there is no dispute on appeal as to the
Sequence's originality (an issue the district court never reached), no claim that the
merger doctrine renders the Sequence uncopyrightable, and no claim that an
alternative selection and arrangement of asanas would be "less useful" than the

Sequence. The Panel's citation to *ATC Distribution*—another out-of-circuit merger doctrine case that assesses the originality of a compilation and relies on *BellSouth*—is inapposite for the same reasons. 402 F.3d at 707, 711-12.

**B.      The Panel Opinion Erroneously Construes the Idea/Expression Dichotomy That Underpins the Copyright Act.**

The Court should also grant rehearing and reversal because the Panel's holding rests on two fundamentally erroneous premises regarding the idea/ expression dichotomy: (1) that a work of authorship that is claimed to convey benefits (or is otherwise useful) constitutes an idea, process or system and is thus exempt from copyright protection under Section 102(b) (*see* Op. at 14), and (2) that works fixed in text are "ideas," and only the textual description of those matters is protectable as expression (*see* Op. at 10-11, 13, 15). These premises are not only unsupported by the cases cited by the Panel, but directly contrary to both the Copyright Act and Supreme Court and Circuit precedent—all of which recognize that works fixed in a tangible medium remain copyrightable expression even if those works convey benefits (or can be characterized as "useful").

**1.      The Panel's Opinion Improperly Invents Functionality as the Determinative Consideration of Copyright.**

That a compilation or choreographic work may convey some benefit (or otherwise serve some function) is not relevant, let alone dispositive, to whether the work is copyrightable under the Copyright Act. To conclude otherwise, the Panel

takes out of context the following discussion of the idea/expression dichotomy

from *Baker v. Selden*, 101 U.S. 99, 105 (1879):

> **The description of the art in a book**, though entitled to the benefit of copyright, **lays no foundation for an exclusive claim to the art itself**. The object of the one is explanation; **the object of the other is use**. The former may be secured by copyright. The latter can only be secured, if it can be secured at all, by letters-patent.

(Op. at 9 (emphasis added).) The Panel stretches this language to stand for the

proposition that works of authorship that are believed to convey benefits (*i.e.*,

works that are considered "useful") are uncopyrightable under Section 102. (*Id*. at

9-14.)[3] Yet the very purpose of copyright law is to "promote the Progress of

Science and *useful* Arts," U.S. Const. art. I, § 8 (emphasis added), and *Baker*'s

above-quoted uncontroversial articulation of the idea/expression dichotomy—

namely, that ideas are not copyrightable although expression may be—simply does

not stand for the proposition that the Panel seeks to ascribe to it.

Even if it did, the Copyright Act postdates *Baker* by nearly a century and

expressly rejects that proposition by identifying only a limited range of works—

pictorial, graphic, and sculptural works—for which usefulness is a consideration

relevant to copyrightability. *See* 17 U.S.C. § 101. This so-called "useful articles"

---

[3] *See, e.g*., Op. at 14 ("the Sequence sets forth a method to attain identifiable … results …. As such, it falls within [Section 102(b)'s] definition of an idea, process, or system excluded from copyright protection); Op. at 13 (Bikram's attempt to "secure copyright protection for a healing art: a system designed to yield physical benefits … is precluded by copyright's idea/expression dichotomy, codified by Section 102(b)").

limitation provides that expressive elements of pictorial, graphic, and sculptural works are protectable by copyright while their functional elements are not. *Id.*

This Circuit and others have recognized that analysis of a work's functionality is confined to the statutorily enumerated pictorial, graphic, and sculptural works and have cautioned against its expansion to other works. *See, e.g.*, *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 202 (9th Cir. 1989) ("The 'useful article' exception is intended to apply only to [pictorial, graphic, and sculptural] works."); *ADA v. Delta Dental Plans Ass'n*, 126 F.3d 977, 980 (7th Cir. 1997) ("[T]he special question [of functionality addressed in the useful articles limitation] is not one that should be extended."). There is thus no basis to apply functionality considerations to choreographic works or compilations.

Moreover, both the Supreme Court and this Court have repeatedly affirmed copyright protection for works that have a function (*i.e.*, useful purpose) and are not subject to the statutory "useful articles" limitation. *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 360 (1991) (phonebook copyrightable if sufficiently creative); *CDN Inc. v. Kapes*, 197 F.3d 1256 (9th Cir. 1999) (coin price list copyrightable); *Practice Management*, 121 F.3d at 519-20 (coding system designed solely to facilitate uniform medical billing methods copyrightable);

*Johnson Controls*, 886 F.2d at 1174-76 (computer program used as a process control system at a wastewater treatment plant copyrightable).[4]

Having misconstrued *Baker* and erroneously rendered functionality considerations determinative to the idea/expression analysis, the Panel then relies on Bikram's, his students' and various observers' statements—the vast majority of which are not part of the record in this case but a result of the Panel's independent research—that refer to the Sequence as a "system" or state that it conveys various physical and mental benefits. (Op. at 3-5, 11-15, 18.) Plainly influenced by these nominal descriptions of the Sequence as a "system," which the Opinion cites at least half a dozen times, the Panel concludes that the Sequence is a "system" under Section 102(b) "designed to yield physical benefits and a sense of well-being" and is thus not entitled to copyright protection. (Op. at 13.)

This too is error, as neither the author's nor third parties' nominal descriptions of a work are relevant, let alone determinative, in a Section 102

---

[4] Even if the scope of copyright protection afforded to the Sequence was limited because of its usefulness, this does not compel a finding that the Sequence is not copyrightable in its entirety. Even where the "useful articles" limitation applies, courts must identify and afford copyright protection to any expressive, non-utilitarian elements of the work. *See, e.g.*, *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1147 (9th Cir. 2003) (recognizing the copyrightability of features separable from the utilitarian aspects of the work); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1080 (9th Cir. 2000) (same). The Panel failed to perform any such analysis, despite a record replete with examples of the creative aspects of the Sequence. (EOR 267-69, 530-73.)

analysis. *See Warren Publ'g, Inc. v. Microdos Data Corp.*, 115 F.3d 1509, 1514

n.13 (11th Cir. 1997) ("[U]se of the term 'idea, procedure, process, system' ... to

characterize expression does not itself preclude copyrightability.") This was made

plain in the two Ninth Circuit decisions that the Panel ignores, where both the

authors' and this Court's nominal description of the works at issue as "systems" or

"processes" had no bearing on the Section 102 analysis. *See Practice Management*,

121 F.3d at 517 n.8; *Johnson Controls*, 886 F.2d at 1174-76.

The Panel's reasoning—that the purported existence of benefits from a work

that could nominally be referred to as a system renders the work uncopyrightable

—leads to particularly incongruous results when applied to choreographic works

like the Sequence. Repeated performance of nearly any iconic choreographic work,

from the *Rite of Spring* to *Revelations*, can be said to benefit the performers' well-

being, yet it is unfathomable that these works would be excluded from copyright

protection as "system[s] designed to improve health." (Op. at 7.) The absence of

any limiting principle to the Panel's logic also means that a public performance of

any work that can be said to achieve some benefit or result—such as performances

of a score that happens to improve a musician's technique or performance of a

monologue that improves an actor's articulation—would be deprived of copyright

protection as a "system" that yields benefits. This is not and cannot be the law.

**2. The Panel's Opinion Places Undue Import on the Manner in Which the Sequence Has Been Fixed.**

The Panel's opinion also erroneously construes *Baker*—which observes that ideas described in text are not copyrightable although the original expression of those ideas may be, 101 U.S. at 102-03—as standing for the proposition that an independent work of authorship otherwise entitled to copyright protection is transformed into an unprotectable "idea" if it is fixed in text. The Panel then applies this misinterpretation of *Baker* to conclude that the Sequence—a choreographic work and compilation fixed in text—constitutes an unprotectable "idea." (Op. at 15-16.) *Baker* lends no such support for this conclusion.

In *Baker*, the author of a copyrighted instruction manual on bookkeeping that enclosed forms for organizing bookkeeping information by using lines and headers claimed that another author's similar forms infringed his copyright. 101 U.S. at 100. Because such forms were not (and still are not) the subject of copyright, which at that time was conferred only on a limited set of "objects" (books, maps, charts, musical compositions, prints and engravings), the author argued that the copyright in his manual—the only "object" of copyright remotely applicable to the material described therein—entitled him to the exclusive use of the idea of using forms with lines and headers described in the manual. *Id*. at 101. While the Supreme Court concluded that the method of bookkeeping described in the manual was an idea and not copyrightable expression, *id*. at 104-05, its holding

cannot be construed to support the proposition that works of authorship fixed in text are necessarily unprotectable ideas.

The Panel's opinion nevertheless reduces *Baker* to this proposition and thus places undue import on the fact that the Sequence was fixed in a text—*Bikram's Beginning Yoga Class*. (*See, e.g.*, Op. at 10-11.) Indeed, the Panel frames the key question for review as, "Does Choudhury's copyright protection for his 1979 book extend to the Sequence itself?" (*Id.*) Having posited that question, the Panel concludes that the Sequence is an idea expressed in text. (*Id.* at 13-14.) But *Bikram's Beginning Yoga Class*, the text in which the Sequence is fixed, is not a narrative that generally describes an idea. Rather, the text describes and fixes a standalone, independent work of authorship, as the Copyright Office expressly recognized. (AOB 60; EOR631-33.)

Under the Panel's rule—that a work of authorship described and fixed in text is necessarily an unprotectable "idea" and that only the textual description of those matters is protectable as expression—there would be no protection for the public performance of any works fixed in text. This is contrary to the express terms of the Copyright Act, which makes clear that the method of a fixation does not affect the author's rights in a work and that a work fixed in one medium can be infringed by reproduction in another medium. *See* 17 U.S.C. § 106; *see also Filmvideo Releasing Co. v. Hastings*, 426 F. Supp. 690, 693-94 (S.D.N.Y. 1976),

*aff'd*, 594 F.2d 852 (2d Cir. 1978) (material fixed in one medium may be infringed by material produced in another medium); *Horgan v. Macmillan, Inc*., 789 F.2d 157, 158 (2d Cir. 1986) (a book of performance photographs can infringe copyright in the choreographic work). Among the rights bestowed on the author is the exclusive right of public performance of the work—which is the right infringed by Evolation. *See* 17 U.S.C. § 106.

### C. Neither *Palmer* nor *Meredith* Supports the Conclusion That the Sequence Is an Uncopyrightable System.

Nor do the two out-of-circuit cases cited by the Panel support its conclusion that the Sequence is an uncopyrightable system. (Op. at 9-10.) In *Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002), the Eleventh Circuit affirmed the denial of a preliminary injunction sought by an author who claimed that his manual on achieving "increased consciousness" was infringed by a competitor's manual. Both manuals contained a section describing various "exercises" "designed to allow a student to control his beliefs." *Id*. at 1327, 1334. Each exercise consisted of numerous phrases that the student was to repeat out loud until he was able to eliminate mental associations prompted by those phrases. *Id*. at 1331. The court focused on the individual exercises appearing in both manuals and observed that the "exercises" at issue were "simply a process for achieving increased consciousness … [and] cannot be protected by copyright." *Id*. at 1334. Here, Bikram is not claiming a copyright in the individual "exercises," *i.e.*, individual

asanas, but in his selection and arrangement of asanas into a composition. While *Palmer* imprecisely refers to "exercises" (plural), it never comments on the arrangement of the exercises (including whether the competing manuals arranged the exercises in a similar manner), let alone holds that a specific arrangement of various "exercises" cannot constitute expression. In any event, *Palmer* also disclaimed that it "express[ed] no opinion" on how the "question[] regarding the idea-expression dichotomy … will finally be resolved." *Id*. at 1334-35.

Nor does *Publications International Ltd. v. Meredith Corp*., which denied copyright protection to "barebones recipes" that lacked "even a bare modicum of … creative expression," support the conclusion that the Sequence is not protected by copyright. 88 F.3d 473, 480-82 (7th Cir. 1996). Without "express[ing] any opinion whether recipes are … *per se* amenable to copyright protection," *id*. at 480, the court found that the specific recipes at issue were excluded from copyright protection under Section 102(b) because they were "comprise[d] [of nothing more than] the lists of required ingredients and the directions for combining them to achieve the final products, [with] no expressive elaboration upon either of these functional components." *Id.* But a choreographic work like the Sequence simply cannot be analogized to cooking recipes.[5] The performance of the Sequence, like

---

[5] Nor is there any reasonable basis to analogize a choreographic work like the Sequence to surgical procedures based on the premise that the Sequence is claimed to alleviate "physical injuries and illness." (Op. at 13.)

any other choreographic work, is not a means to achieve any one "final product," and unlike a copyright in a recipe, which could create a "monopoly ... for producing certain foodstuffs," a copyright in the Sequence creates no monopoly on any "product." *Id.* at 481. The Sequence—unlike the recipes in *Meredith*—contains many expressive elements that were selected not for their practical benefit but for their artistry. (AOB at 36; EOR268-69.) Most importantly, *Meredith* itself recognized that the "***order and manner*** in which [the author] presents the recipes [in a book] are [protected by] the copyright in the compilation." *Id.* at 481 (emphasis added); *see also id*. at 482 ("Meredith's compilation copyright in [the book] may not extend to cover the individual recipes themselves, [but] only [to] the ***manner and order*** in which they are presented.") (emphasis added). Thus, even if individual asanas could be analogized to cooking recipes, the manner and order in which the asanas are organized in the Sequence is entitled a protection under *Meredith*.

Finally, *Seltzer v. Sunbrock*, 22 F. Supp. 621 (S.D. Cal. 1938)—a district court opinion that predates the Copyright Act and holds that a system for conducting roller skating races cannot be copyrighted—is inapposite, as its reasoning cannot be untethered from the fact that the court analyzed whether a pamphlet describing the rules could be characterized as a dramatic composition, a

17

requisite element of which was a fixed plot or story, *id*. at 628-30, and that parts of the rules were in the public domain and used in other sporting events, *id*. at 628.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Bikram respectfully requests that the Court grant its request for Panel rehearing and rehearing en banc and reverse the Panel opinion.

Respectfully submitted,

Dated:    December 7, 2015          DANIEL M. PETROCELLI
                                    IVANA CINGEL
                                    O'MELVENY & MYERS LLP


                                    By:   /s/ Ivana Cingel
                                    _____
                                          Ivana Cingel
                                        Attorneys for Plaintiffs-Appellants
                                        Bikram's Yoga College of India,
                                        L.P. and Bikram Choudhury

## __CERTIFICATE OF COMPLIANCE__

I certify that the attached Petition for Rehearing and for Rehearing En Banc conforms with Circuit Rule 40-1(a), and has 360 lines of text.

Dated:  December 7, 2015

O'MELVENY & MYERS LLP

By:  /s/ Ivana Cingel

Ivana Cingel
icingel@omm.com
O'Melveny & Myers LLP
1999 Avenue of the Stars
Los Angeles, California 90067-6035
(310) 553-6700

*Attorneys for Plaintiffs-Appellants*
*Bikram's Yoga College of India, L.P.*
*and Bikram Choudhury*

## <u>CERTIFICATE OF SERVICE</u>

I, Ivana Cingel, a member of the Bar of this Court, hereby certify that on

December 7, 2015, I caused to be electronically filed with the Clerk of the Court

for the United States Court of Appeals for the Ninth Circuit by using the appellate

CM/ECF system the following document:

**PETITION FOR REHEARING AND FOR REHEARING EN BANC**

I certify that all participants in the case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.


Dated:  December 7, 2015                    By:  /s/ Ivana Cingel
                                                Ivana Cingel

# ATTACHMENT A

# (OPINION)

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BIKRAM'S YOGA COLLEGE OF INDIA, L.P., a California limited partnership; BIKRAM CHOUDHURY, an Individual,<br><br>*Plaintiffs-Appellants*,<br><br>v.<br><br>EVOLATION YOGA, LLC, a New York limited liability company; MARK DROST, an Individual; ZEFEA SAMSON, an Individual,<br>*Defendants-Appellees*. | No. 13-55763<br><br>D.C. No. 2:11-cv-05506-ODW-SS<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted
May 8, 2015—Pasadena, California

Filed October 8, 2015

Before: John T. Noonan, Kim McLane Wardlaw,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Wardlaw

2    BIKRAM'S YOGA COLLEGE V. EVOLATION YOGA

## SUMMARY[*]

### Copyright

Affirming the district court's grant of partial summary judgment, the panel held that a sequence of yoga poses and breathing exercises was not entitled to copyright protection.

The panel held that under 17 U.S.C. § 102(b), the "Sequence," developed by Bikram Choudhury and described in his 1979 book, *Bikram's Beginning Yoga Class*, was not a proper subject of copyright protection because it was an idea, process, or system designed to improve health, rather than an expression of an idea.  Because the Sequence was an unprotectible idea, it was also ineligible for copyright protection as a compilation or choreographic work.

### COUNSEL

Ivana Cingel (argued), Carla Christofferson and Daniel Petrocelli, O'Melveny & Myers LLP, Los Angeles, California, for Defendants-Appellants.

Eric R. Maier (argued) and Louis Shoch, Maier Shoch LLP, Hermosa Beach, California, for Plaintiffs-Appellees.

Kevin M. Fong and Cydney A. Tune, Pillsbury Winthrop Shaw Pittman LLP, San Francisco, California, for Amicus Curiae Yoga Alliance.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## OPINION

WARDLAW, Circuit Judge:

We must decide whether a sequence of twenty-six yoga poses and two breathing exercises developed by Bikram Choudhury and described in his 1979 book, *Bikram's Beginning Yoga Class*, is entitled to copyright protection. This question implicates a fundamental principle underlying constitutional and statutory copyright protection—the idea/expression dichotomy. Because copyright protection is limited to the expression of ideas, and does not extend to the ideas themselves, the Bikram Yoga Sequence is not a proper subject of copyright protection.

## I. Factual and Procedural History

The Indian practice and philosophy of yoga date back thousands of years. *See* Linda Sparrowe, *Yoga* 9 (2002). Derived from ancient Hindu scriptures, including the Bhagavad Gita, the practice of yoga teaches students to attain spiritual fulfillment through control of the mind and body. *See* Stefanie Syman, *The Subtle Body: The Story of Yoga in America* 4 (2010). Yoga has evolved into a diverse set of spiritual, philosophical, and physical disciplines. Some students practice yoga to transcend the physical body and unite with divine powers; others focus on improving strength, flexibility, and overall physical fitness.

The history of yoga in the United States reflects its wide-ranging appeal. Some of yoga's first American adherents included nineteenth-century transcendentalists, such as Henry David Thoreau and Ralph Waldo Emerson, who were fascinated by yoga's approach to achieving enlightenment.

4    BIKRAM'S YOGA COLLEGE V. EVOLATION YOGA

In the early twentieth century, yoga grew more popular as scientists and physicians began to study the physical benefits of the practice. These physical benefits caught the attention of Hollywood celebrities, including Gloria Swanson, Greta Garbo, and Marilyn Monroe, who embraced yoga as a tool to fight illness and aging. *See* Pankaj Mishra, *Posing as Fitness*, N.Y. Times, July 23, 2010.[1] By the 1960s, Americans increasingly turned to yoga as a "non-religious, decidedly unspiritual" form of physical exercise. Sparrowe, *supra*, at 50.

In 1971, Bikram Choudhury, the "self-proclaimed 'Yogi to the stars,'" *id.* at 56, arrived in Beverly Hills, California. He soon became a central figure in the growing popularity of yoga in the United States. Born and raised in Calcutta, India, Choudhury began studying yoga at age four and learned hundreds of traditional Hatha yoga "asanas," or individual poses. Hatha yoga places particular emphasis on the physical components of yoga. Choudhury developed a sequence of twenty-six asanas and two breathing exercises, arranged in a particular order, which he calls the "Sequence." *See* Bikram Choudhury, *Bikram's Beginning Yoga Class* (1979). Choudhury opened his own studio, where he began offering "Bikram Yoga" classes. In a Bikram Yoga class, the Sequence is practiced over the course of ninety minutes, to a series of instructions (the "Dialogue"), in a room heated to 105 degrees Fahrenheit to simulate Choudhury's native Indian climate.

Choudhury popularized the Sequence by marketing the many health and fitness benefits it provides. Choudhury

---

[1] This article may be found at http://www.nytimes.com/2010/07/25/books/review/Mishra-t.html.

informs prospective students that his "system of Hatha Yoga is capable of helping you avoid, correct, cure, heal, or at least alleviate the symptoms of almost any illness or injury." He claims that he developed the Sequence after "many of years of research and verification . . . using modern medical measurement techniques." He tells reporters that he extended the careers of professional athletes, including Kareem Abdul-Jabbar and John McEnroe. This message has resonated with an American audience: as the complaint in this action explains, "[p]ublic demand for Bikram Yoga classes grew steadily once Bikram Yoga participants realized that Bikram's unique yoga style and method offered them tremendous physical, mental and other benefits."

In 1979, Choudhury published the book *Bikram's Beginning Yoga Class*, which includes descriptions, photographs, and drawings of the Sequence's twenty-six poses and two breathing exercises. Choudhury registered the book with the U.S. Copyright Office in 1979. In 2002, he also registered the "compilation of exercises" contained in the book, using a supplementary registration form that referenced back to the 1979 book.[2]

In 1994, Choudhury introduced the "Bikram Yoga Teacher Training Course." In 2002 and 2005, respectively, Mark Drost and Zefea Samson enrolled in and successfully completed the three-month Bikram Yoga Teacher Training

---

[2] Choudhury has registered several other works with the Copyright Office, including Bikram's Beginning Yoga Class (2d ed.) (2000), Bikram's Beginning Yoga Class (sound cassette) (2002), Bikram's Yoga College of India Beginning Yoga Dialogue (2002), Bikram's Yoga College of India: Yoga Teacher Training Course: Curriculum Outline (2002), Yoga for Pregnancy (2002), Bikram's Advanced Yoga Class (2006), and Bikram's Yoga (2007).

course.  In 2009, Drost and Samson founded Evolation Yoga, LLC.  Evolation Yoga offers several types and styles of yoga, including "hot yoga," which is similar to "Bikram's Basic Yoga System."  Evolation acknowledges that hot yoga "includes 26 postures and two breathing exercises and is done for 90 minutes, accompanied by a series of oral instructions, in a room heated to approximately 105 degrees Fahrenheit."

On July 1, 2011, Choudhury and Bikram's Yoga College of India, L.P. ("Choudhury")[3] filed a complaint in the Central District of California alleging, *inter alia*, that defendants Evolation Yoga, LLC, Mark Drost, and Zefea Samson ("Evolation") infringed "Bikram's Copyrighted Works through substantial use of Bikram's Copyrighted Works in and as part of Defendants' offering of yoga classes."  On November 12, 2012, Evolation moved for partial summary judgment as to Choudhury's claim of copyright infringement of the "Sequence."  The district court granted Evolation's motion, ruling that the "Sequence is a collection of facts and ideas" that is not entitled to copyright protection.  The parties settled all remaining claims against each other, and Choudhury timely appealed as to the "Sequence."

## II.  Standard of Review

"We review de novo a district court's grant of partial summary judgment, and may affirm on any ground supported by the record."  *White v. City of Sparks*, 500 F.3d 953, 955 (9th Cir. 2007) (citation omitted).  "After 'viewing the

---

[3] For the purposes of this appeal, it is not necessary to distinguish between Bikram Choudhury, the individual, and Bikram's Yoga College of India, LP.  Accordingly, we refer to all Plaintiffs-Appellants as Choudhury.

evidence in the light most favorable to the nonmoving party,' we determine 'whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.'" *Id.* (quoting *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003)).

## III. Discussion

Though Choudhury emphasizes the aesthetic attributes of the Sequence's "graceful flow," at bottom, the Sequence is an idea, process, or system designed to improve health. Copyright protects only the expression of this idea—the words and pictures used to describe the Sequence—and not the idea of the Sequence itself. Because the Sequence is an unprotectible idea, it is also ineligible for copyright protection as a "compilation" or "choreographic work." The district court properly granted partial summary judgment in favor of Evolation because the Sequence is not a proper subject of copyright.

### A. The Sequence Is an Unprotectible Idea.

Section 102(a) of the Copyright Act of 1976 sets forth the proper subjects of copyright protection. 17 U.S.C. § 102(a). Section 102(b) expressly excludes protection for "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." *Id.* § 102(b). Section 102(b) codifies the "idea/expression dichotomy," under which "every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication." *Golan v. Holder*, 132 S. Ct. 873, 890 (2012) (quoting *Eldred v. Ashcroft*,

537 U.S. 186, 219 (2003)); *see also Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 529 (9th Cir. 1987) (explaining that Section 102(b) "expressly codified" this principle); H.R. Rep. No. 94–1476, at 57 (1976) (explaining that the "purpose [of Section 102(b)] is to restate . . . that the basic dichotomy between expression and idea remains unchanged").

The idea/expression dichotomy has two constitutional foundations: the Copyright Clause and the First Amendment. Under the Copyright Clause, "[t]he primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (quoting U.S. Const. art. I, § 8, cl. 8). Thus, "[t]he 'constitutional command' . . . is that Congress, to the extent it enacts copyright laws at all, create a 'system' that 'promote[s] the Progress of Science.'" *Eldred*, 537 U.S. at 212 (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 6 (1966)). "To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349–50. At the same time, the idea/expression dichotomy "strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 556 (1985); *see also Eldred*, 537 U.S. at 219 (describing the idea/expression dichotomy as a "built-in First Amendment accommodation[]"); *L.A. News Serv. v. Tullo*, 973 F.2d 791, 795 (9th Cir. 1992) ("Copyright law incorporates First Amendment goals by ensuring that copyright protection extends only to the forms in which ideas and information are expressed and not to the ideas and information themselves."); 5 Melville B. Nimmer & David

Nimmer, *Nimmer on Copyright* § 19E.04[B] (2015) ("[F]ree access to ideas is vital not only for copyright law but also for the maintenance of the democratic dialogue . . . .").

In *Baker v. Selden*, 101 U.S. 99 (1879), the Supreme Court addressed the protection copyright law provided to a book, a classic subject of copyright protection, explaining a *system* of book-keeping. *Id.* at 99–100. The Court held that the book's expression of the book-keeping system was protected, but the system of book-keeping itself was not entitled to copyright protection. *Id.* at 102. The Court explained:

> The description of the art in a book, though entitled to the benefit of copyright, lays no foundation for an exclusive claim to the art itself. The object of the one is explanation; the object of the other is use. The former may be secured by copyright. The latter can only be secured, if it can be secured at all, by letters-patent.

*Id.* at 105.

Following *Baker*, and recognizing this vital distinction between ideas and expression, courts have routinely held that the copyright for a work describing how to perform a process does not extend to the process itself. In *Palmer v. Braun*, 287 F.3d 1325 (11th Cir. 2002), for example, the Eleventh Circuit held that meditation exercises described in a copyrighted manual on exploring the consciousness were "a process" unentitled to copyright protection. *Id.* at 1334. The court explained that the "exercises, while undoubtedly the product of much time and effort, are, at bottom, simply a

process for achieving increased consciousness. Such processes, even if original, cannot be protected by copyright."[4] *Id.* Similarly, in *Publications International, Ltd. v. Meredith Corp.*, 88 F.3d 473 (7th Cir. 1996), the Seventh Circuit held that recipes contained in a copyrighted cookbook are not entitled to copyright protection, for they merely "describe a procedure by which the reader may produce many dishes," and "there can be no monopoly in the copyright sense in the ideas for producing certain foodstuffs." *Id.* at 481. Finally, in *Seltzer v. Sunbrock*, 22 F. Supp. 621 (S.D. Cal. 1938), which predates the Copyright Act of 1976 but applies *Baker*, the court held that the copyright in a manual describing how to organize roller-skating races does not extend to the rules for the races themselves. *Id.* at 630. The court explained, "[w]hat [the author] really composed was a description of a system for conducting races on roller skates. A system, as such, can never be copyrighted. If it finds any protection, it must come from the patent laws." *Id.* (citing *Baker*, 101 U.S. 99).

Here, we must similarly determine not the validity of a copyright but rather its scope.[5] Does Choudhury's copyright

---

[4] *Cf. Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1075 (2d Cir. 1992) (holding that the owner of copyrights in training materials describing ancient Sufi methods to "better understand oneself and one's interactions with others" was judicially estopped from claiming copyright protection for the program techniques, in light of representations in commercial publications that the techniques were "based upon . . . proven scientific knowledge" and "provable in the laboratory and clinically").

[5] As noted above, Choudhury obtained a copyright for a "compilation of exercises" through his 2002 supplementary registration to *Bikram's Beginning Yoga Class*, which was first published in 1979. Choudhury claims that the 2002 supplementary registration relates back to the 1979 registration. In Choudhury's view, the supplementary registration thus

protection for his 1979 book extend to the Sequence itself? Under the fundamental tenets of copyright law and consistent with the precedents discussed above, the answer is no.

As Choudhury describes it, the Sequence is a "system" or a "method" designed to "systematically work every part of the body, to give all internal organs, all the veins, all the ligaments, and all the muscles everything they need to maintain optimum health and maximum function." In *Bikram's Beginning Yoga Class*, Choudhury explains that he "arrived at the sequence of postures" after "[researching] the diseases and the postures and after many years of research and verification . . . using modern medical measurement techniques." The book tells readers that "Bikram's twenty-six exercises systematically move fresh, oxygenated blood to one hundred percent of your body, to each organ and fiber, restoring all systems to healthy working order, just as Nature intended. " Bonnie Jones Reynolds, *Introduction* to *Bikram's Beginning Yoga Class*, at xi (1979). This text promises readers that Choudhury's "system of Hatha Yoga is capable of helping you avoid, correct, cure, heal, or at least alleviate the symptoms of almost any illness or injury."

Also illuminating is Choudhury's spoken Dialogue, which accompanies the Sequence. Before the Sequence's first breathing exercise, for example, the instructor tells students, "[The exercise] is good for the lungs and respiratory system.

---

issued within five years of first publication and therefore serves as "prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). Here, however, we need not decide whether Choudhury's supplementary registration is prima facie evidence of the validity of the copyright, for even if it were, the undisputed facts are sufficient to overcome any presumption of validity.

This exercise expands your lungs to their maximum
expansion capacity.  And it improves the elasticity of your
lungs."  Before the twelfth pose, the instructor explains:

> Every exercise in the world you do, you burn
> energy/calories like driving a car burns gas.
> The tank is empty, you need to fill it up again.
> Hatha Yoga class is a gas station, it is the only
> place in the world where you gain energy
> instead of burning energy.  Asana is the only
> *natural* physical activity in the world because
> it is scientific [and] with the help of science,
> we can explain nature.

An essential element of this "system" is the order in
which the yoga poses and breathing exercises are arranged.
*Bikram's Beginning Yoga Class* instructs readers, "Do the
poses in the strict order given in this book.  Nothing about
Bikram's Beginning Yoga Class is haphazard.  It is designed
to scientifically warm and stretch muscles, ligaments, and
tendons in the order in which they should be stretched."
*Bikram's Beginning Yoga Class*, *supra*, at xi.  For instance,
Choudhury explains, "Camel Pose (Ustrasana) stretches the
abdomen and compresses the spine; so for the next posture,
I chose the Rabbit Pose (Sasangasana), which does the
converse: stretches the back and compresses the abdomen."[6]
One *Yoga Journal* article explains that "[a]ccording to

---

[6] A recent research study published in the *Journal of Strength and
Conditioning Research* further explains the clinical effects of the
Sequence's composition: "The combination of rapid transition between
postures and environmental heat stress produces a substantial
cardiovascular response and muscle fatigue."  Brian L. Tracy & Cady E.F.
Hart, *Bikram Yoga Training and Physical Fitness in Healthy Young
Adults*, 27 J. Strength & Conditioning Res. 822, 823 (2013).

Bikram, each posture in his series forms the perfect basis for the next, warming and stretching the appropriate muscles, ligaments and tendons."  Loraine Despres, *Yoga's Bad Boy: Bikram Choudhury*, Yoga J., Aug. 28, 2007.[7]

Choudhury thus attempts to secure copyright protection for a healing art: a system designed to yield physical benefits and a sense of well-being.  Simply put, this attempt is precluded by copyright's idea/expression dichotomy, codified by Section 102(b).  As the Supreme Court explained in *Baker*, "Certain mixtures are found to be of great value in the healing art.  If the discoverer writes and publishes a book on the subject (as regular physicians generally do), he gains no exclusive right to the manufacture and sale of the medicine; he gives that to the public."  101 U.S. at 102–03.  Thus, for example, the copyright for a book describing how to perform a complicated surgery does not give the holder the exclusive right to perform the surgery.  Like the series of movements a surgeon makes, the Sequence is, as Choudhury tells readers, a method designed to "cure, heal, or at least alleviate" physical injuries and illness.  Monopoly protection for such a method "can only be secured, if it can be secured at all, by letters-patent."  *Id.* at 105; *see also Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526 (9th Cir. 1992), *as amended* (Jan. 6, 1993) ("In order to enjoy a lawful monopoly over the idea or functional principle underlying a work, the creator of the work must satisfy the more stringent standards imposed by the patent laws.").  In light of *Baker* and its progeny, Choudhury's healing methodology is not eligible for protection by copyright.  Indeed, if it is entitled to protection

---

[7] This article may be located at http://www.yogajournal.com/article/lifestyle/yoga-s-bad-boy-bikram-choudhury/.

14    BIKRAM'S YOGA COLLEGE V. EVOLATION YOGA

at all, that protection is more properly sought through the patent process.[8]

That the Sequence may produce spiritual and psychological benefits makes it no less an idea, system, or process and no more amenable to copyright protection. Choudhury's personal declaration explains that the Sequence offers "spiritual benefits" to his students and "lead[s] to a general sense of peace and well-being that is undoubtedly of benefit to all of us."  Like the meditation exercises designed to achieve greater consciousness in *Braun*, 287 F.3d at 1334, the Sequence sets forth a method to attain identifiable, if spiritual and psychological, results: a "sense of well-being" and "boundless energy."  *Bikram's Beginning Yoga Class*, *supra*, at xi.[9]  As such, it falls within the Copyright Act's definition of an idea, process, or system excluded from copyright protection.  *See* 17 U.S.C. § 102(b).

Choudhury contends that the Sequence's arrangement of postures is "particularly beautiful and graceful."  But beauty is not a basis for copyright protection.  The performance of many ideas, systems, or processes may be beautiful: a surgeon's intricate movements, a book-keeper's careful notations, or a baker's kneading might each possess a certain grace for at least some viewers.  Indeed, from Vermeer's

---

[8] We do not opine on whether the Sequence is, in fact, patentable.

[9] Choudhury's website features research, including a report presented at the Anxiety and Depression Association of America Conference, which concludes that Bikram Yoga may reduce stress, anxiety, and depression among women at risk for mental health problems.  *See* Fran Lowry, *Hot Yoga Cools Anxiety, Relieves Depression*, Medscape (Apr. 13, 2015), *reproduced at Research*, Bikram Yoga, http://www.bikramyoga.com/BikramYoga/Research.php (last visited Sept. 16, 2015).

milkmaid to Lewis Hine's power house mechanic, the individual engrossed in a process has long attracted artistic attention. But the beauty of the process does not permit one who describes it to gain, through copyright, the monopolistic power to exclude all others from practicing it. This is true even where, as here, the process was conceived with at least some aesthetic considerations in mind. Just as some steps in a recipe may reflect no more than the author's belief that a particular ingredient is beautiful or that a particular cooking technique is impressive to watch and empowering to practice, some elements in Choudhury's Sequence may reflect his aesthetic preferences. Yet just like the recipe, the Sequence remains unprotectible as a process the design of which primarily reflects function, not expression.

In drawing the "difficult" line between idea and expression in this case, we are mindful of the "guiding consideration" of the idea/expression dichotomy: "the preservation of the balance between competition and protection reflected in the patent and copyright laws." *CDN Inc. v. Kapes*, 197 F.3d 1256, 1262 (9th Cir. 1999) (quoting *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)). As in *Baker*, the "object" of the book *Bikram's Beginning Yoga Class* is "explanation": it tells readers how to perform the Sequence and encourages them to try it. *Baker*, 101 U.S. at 105. The introduction to *Bikram's Beginning Yoga Class*, for example, urges the audience to: (i) "turn to the Contents page," (ii) "read through the book," (iii) "build gradually," and (iv) "do the poses in the strict order given in this book." *Bikram's Beginning Yoga Class*, *supra*, at ix–xi. Like a book explaining "Book-keeping Simplified," 101 U.S. at 100, *Bikram's Beginning Yoga Class* sets out to "communicate to the world the useful knowledge which it contains." *Id.* at 103. It invites readers to practice

the method it describes. "But this object would be frustrated if the knowledge could not be used without incurring the guilt of piracy of the book." *Id.* Consumers would have little reason to buy Choudhury's book if Choudhury held a monopoly on the practice of the very activity he sought to popularize. Rather than "stimulat[ing] artistic creativity for the general public good," copyright protection for the Sequence would prevent the public from engaging with Choudhury's idea and building upon it. *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)).

## B. The Sequence Is Not a Copyrightable Compilation.

Choudhury contends that the Sequence is entitled to copyright protection as a "compilation." Specifically, Choudhury claims that the Sequence qualifies for copyright protection because his "selection, coordination, and arrangement" of twenty-six poses and two breathing exercises create a coherent and expressive composition. The district court correctly rejected this argument.

The Copyright Act identifies compilations as a proper subject of copyright. Section 103 of the Copyright Act provides that "[t]he subject matter of copyright as specified in section 102 includes compilations." 17 U.S.C. § 103(a). A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* § 101. It essential to recognize, however, that Section 103 complements Section 102. Thus, while a compilation may be eligible for copyright protection, it must

nevertheless satisfy the requirements of Section 102. A compilation must, in other words, represent an "original work[] of authorship," and "[i]n no case" may copyright protection "extend to any idea, procedure, process, [or] system." *Id.* § 102. The availability of copyright protection for compilations, therefore, does not eliminate Section 102's categorical bar on copyright protection for ideas.

The Supreme Court addressed the relationship between these "two well-established propositions"—that compilations are eligible for copyright but facts and ideas are not—in *Feist*, 499 U.S. 340. In *Feist*, the Court considered whether the collection of names, towns, and telephone numbers in a telephone directory is eligible for copyright protection as a compilation. The Court held that "[a] factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves." *Id.* at 350–51.

By claiming copyright protection for the Sequence as a compilation, Choudhury misconstrues the scope of copyright protection for compilations. As we have explained, the Sequence is an idea, process, or system; therefore, it is not eligible for copyright protection. That the Sequence may possess many constituent parts does not transform it into a proper subject of copyright protection. Virtually any process or system could be dissected in a similar fashion. *Baker*'s examples of "how-to" treatises are instructive: "A treatise on . . . the construction and use of ploughs, or watches, or churns[,] . . . or on the mode of drawing lines to produce the effect of perspective" would likely list the steps necessary to perform the process it describes. 101 U.S. at 102. The watchmaking treatise's author could not claim a copyright in

the process of making a watch, however, by breaking down the process into multiple steps and labeling it a "compilation." Recipes further illustrate the point: a cake recipe could be viewed as a "compilation" of carefully arranged and selected steps—which may, of course, reflect the personal preferences and tastes of the recipe's author—yet the recipe would remain, in most instances, a process that is not eligible for copyright protection. *See Meredith*, 88 F.3d at 480–81. Likewise, Choudhury cannot obtain copyright protection for the Sequence as a compilation by separately identifying the poses and breathing exercises it contains.

Moreover, according to Choudhury himself, the medical and functional considerations at the heart of the Sequence compel the very selection and arrangement of poses and breathing exercises for which he claims copyright protection. According to *Bikram's Beginning Yoga Class*, the "strict order" of the poses "is designed to scientifically warm and stretch muscles, ligaments, and tendons in the order in which they should be stretched." *Bikram's Beginning Yoga Class*, *supra*, at xi. Read in the light most favorable to Choudhury, the record demonstrates that the overarching reason for the organization of the poses and breathing exercises in the Sequence is to further the basic goals of the method: to attain "[p]roper weight, muscle tone, glowing complexion, boundless energy, vibrant good health, and a sense of well-being." *Id.* The Sequence's composition renders it more effective as a process or system, but not any more suitable for copyright protection as an original work of authorship.

It makes no difference that similar results could be achieved through a different organization of yoga poses and breathing exercises. Choudhury argues that he could have

BIKRAM'S YOGA COLLEGE v. EVOLATION YOGA    19

chosen from "hundreds of postures" and "countless arrangements of these postures" in developing the Sequence. But the possibility of attaining a particular end through multiple different methods does not render the uncopyrightable a proper subject of copyright. *See BellSouth Advert. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc.*, 999 F.2d 1436, 1443 (11th Cir. 1993) ("The relevant inquiry [under *Feist*] is not whether there is some imaginable, although manifestly less useful, method of arranging business telephone listings."); *see also ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 711–12 (6th Cir. 2005) ("To be sure, [the publisher of a catalog describing a transmission parts numbering system] could have arranged the parts information in other ways that were potentially less clear or useful, but this fact alone is insufficient to demonstrate the creativity necessary for copyright protection."). Though it may be one of many possible yoga sequences capable of attaining similar results, the Sequence is nevertheless a process and is therefore ineligible for copyright protection.[10]

---

[10] Choudhury argues that the district court granted undue deference to a recent Copyright Office Policy Statement concerning copyright protection for yoga sequences as compilations. *See* Registration of Claims to Copyright, 77 Fed. Reg. 37605 (June 22, 2012). In this Statement, the Copyright Office explains that

> a claim in a compilation of exercises or the selection and arrangement of yoga poses will be refused registration. . . . The Copyright Office would entertain a claim in the selection, coordination or arrangement of, for instance, photographs or drawings of exercises, but such compilation authorship would not extend to the selection, coordination or arrangement of the exercises themselves that are depicted in the photographs or drawings.

## C. The Sequence Is Not a Copyrightable Choreographic Work.

The district court properly rejected Choudhury's argument that the Sequence is entitled to copyright protection as a choreographic work.[11] The 1976 Copyright Act extended protection to "pantomimes and choreographic works," which were previously not copyrightable. Pub. L. No. 94–553, 90 Stat. 2541, 2545 (codified at 17 U.S.C. § 102(a)(4)). In 1986, the Second Circuit observed that "[e]xplicit federal copyright protection for choreography is a fairly recent development, and the scope of that protection is an uncharted area of the law." *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 160 (2d Cir. 1986). This remains true today.

The parties debate the meaning of the term "choreography," which we have not yet defined in the copyright context. Nor did Congress define the term

---

*Id.* at 37607. We need not decide whether the district court improperly deferred to the Copyright Office, however, for we "may affirm on any ground supported by the record." *White*, 500 F.3d at 955 (citation omitted). The undisputed evidence, viewed in the light most favorable to Choudhury, precludes copyright protection for the Sequence.

[11] Though not dispositive, we note that Choudhury did not register the Sequence as a choreographic work. Choudhury's Certificate of Registration for *Bikram's Beginning Yoga Class* is for "a nondramatic literary work." When Choudhury tried to obtain a Certificate of Registration for the Sequence as a "work of performing arts," the Copyright Office denied his application. The Copyright Office stated that the "concept or idea for a particular manner or style of exercise is not registrable." Choudhury's subsequent supplementary registration for a "compilation of exercises" is an extension of the original registration for "a nondramatic literary work," and thus is itself a literary work registration.

"choreographic work[]," apparently because its meaning was "fairly settled." H.R. Rep. No. 94–1476, at 53 (1976). The legislative history does explain, however, that it is not "necessary to specify that 'choreographic works' do not include social dance steps and simple routines." *Id.* at 53–54. The Second Circuit has relied on the Compendium of Copyright Office Practices as persuasive authority and concluded that "[c]horeography represents a related series of dance movements and patterns organized into a coherent whole." *Horgan*, 789 F.2d at 161 (quoting U.S. Copyright Office, *Compendium II: Compendium of Copyright Office Practices* § 450.03(a) (1984)). The *Compendium II* defines "dance" as "static and kinetic successions of bodily movement in certain rhythmic and spatial relationships." *Compendium II*, § 450.01.[12] The "dance movements," according to the *Compendium II*, "must be more than mere exercises, such as 'jumping jacks' or walking steps." *Id.* § 450.03(a). Finally, the *Compendium II* explains that choreography is "usually intended to be accompanied by music" but "need not tell a story" and need not be presented "before an audience." *Id.* §§ 450.01–450.02.

In this case, we need not decide whether to adopt the Copyright Office's definition of "choreographic work" or fashion another on our own because all categories of works eligible for copyright protection, including choreographic works, are subject to the critical requirements and limitations of Section 102. The beauty of this section is that it allows for

---

[12] This interpretation is consistent with dictionary definitions. Webster's defines "choreography" as "the art of symbolically representing dancing." Webster's Ninth New Collegiate Dictionary 237 (9th ed. 1987). "Dance," in turn, is defined as "a series of rhythmic and patterned bodily movements usually performed to music." *Id.* at 324.

the possibility that the term "original work of authorship" may, as it has, evolve and encompass new forms of expression that, like choreography, are not easily reduced to neat definitions. "Congress recurrently adjusts copyright law to protect categories of works once outside the law's compass." *Golan*, 132 S. Ct. at 892 (listing such categories, including foreign works, dramatic works, photographs, motion pictures, fixed sound recordings, and architectural works). Yet as Congress has responded to new technologies and evolving understandings of creative expression, the idea/expression dichotomy has remained firmly in place. This dichotomy, as this case illustrates, polices the uncertain boundaries of copyrightable subject matter.

The Sequence is not copyrightable as a choreographic work for the same reason that it is not copyrightable as a compilation: it is an idea, process, or system to which copyright protection may "[i]n no case" extend. 17 U.S.C. § 102(b). We recognize that the Sequence may involve "static and kinetic successions of bodily movement in certain rhythmic and spatial relationships." *Compendium II*, § 450.01. So too would a method to churn butter or drill for oil. That is no accident: "successions of bodily movement" often serve basic functional purposes. Such movements do not become copyrightable as "choreographic works" when they are part and parcel of a process. Even if the Sequence could fit within some colloquial definitions of dance or choreography, it remains a process ineligible for copyright protection.

The idea/expression dichotomy, codified in Section 102(b), plays a similar role in defining the scope of protection for a "choreographic work" as it does for compilations. *See Feist*, 499 U.S. at 350–51. In the context of choreographic

BIKRAM'S YOGA COLLEGE V. EVOLATION YOGA      23

works, that role is essential.  Our day-to-day lives consist of many routinized physical movements, from brushing one's teeth to pushing a lawnmower to shaking a Polaroid picture, that could be (and, in two of the preceding examples, have been[13]) characterized as forms of dance.  Without a proper understanding of the idea/expression dichotomy, one might obtain monopoly rights over these functional physical sequences by describing them in a tangible medium of expression and labeling them choreographic works.  The idea/expression dichotomy thus ensures that expansive interpretations of the categories enumerated as proper subjects of copyright will, "[i]n no case," extend copyright protection beyond its constitutional limits.  17 U.S.C. § 102(b).

## IV.  Conclusion

Although there is no cause to dispute the many health, fitness, spiritual, and aesthetic benefits of yoga, and Bikram Yoga in particular, they do not bring the Sequence into the realm of copyright protection.  The Sequence falls squarely within Section 102(b)'s exclusions from copyright protection, no matter how it is labeled or how ably the label is argued. Therefore, the district court properly granted Evolation's motion for partial summary judgment.

**AFFIRMED.**

---

[13] *See How To Do the 'Lawn Mower' (Dance)*, WikiHow, http://www.wikihow.com/Do-the-%22Lawn-Mower%22-(Dance)  (last visited Sept. 16, 2015); *Shake It Like a Polaroid Picture*, Urban Dictionary,    http://www.urbandictionary.com/define.php?term= shake+it+like+a+Polaroid+picture (last visited Sept. 16, 2015).